Jones, J.
(dissenting). I would reverse and leave all issues as to the rights and obligations of the parties to be resolved by the arbitrators, subject to the right of the parties to seek judicial review on a motion to vacate or to modify the arbitrators’ award (CPLR 7511).
I share the view of the majority of our court that CPLR 7503 (subd. [b]) precludes one who has participated in an arbitration from thereafter proceeding under that section to stay the arbi *927 tration. Here Talcott commenced the present arbitration proceeding by service on Lowenstein of a notice of intention to arbitrate and demand for arbitration dated May 14, 1971. Thereafter when Lowenstein moved to stay arbitration, Talcott cross-moved to compel arbitration and the cross motion was granted on September 8, 1971. Accordingly, we all agree that Talcott was foreclosed thereafter from making a CPLR 7503 (subd. [b]) motion to stay the arbitration. I would end the matter there.
If parties seek recourse to arbitration proceedings, a purely statutory process, the jurisdiction reserved to the courts is very limited. By timely application under CPLR 7503 (subd. [b]) a party seeking to avoid arbitration may, on an application for a stay, raise any of the three classic threshold questions for judicial determination, provided he did not commence the arbitration or otherwise participate therein.
Once the matter is before them, questions of law are for determination by the arbitrators and are not open to resolution by judicial intervention. (Matter of Raisler Corp. [N. Y. City Housing Auth.], 32 N Y 2d 274, 282; Lentine v. Fundaro, 29 N Y 2d 382, 385; Matter of Wilkins, 169 N. Y. 494; Matter of Spring Cotton Mills [Buster Boy Suit Co.], 275 App. Div. 196, 200.) The last sentence of CPLR 7501 explicitly provides: “ In determining any matter arising under this article, the court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute.” This sentence was added by section 47 of chapter 532 of the Laws of 1963 for the purpose of abrogating what was left of the so-called “ Cutler-Hammer ” rule (Matter of International Assn. of Machinists [Cutler-Hammer], 297 N. Y. 519) (see N. Y. Legis. Doc. 1962, No. 65[F]). Under that rule our court had taken an expansive view of the courts’ role in making determinations with respect to the merits of the dispute between the parties notwithstanding that the parties had agreed to submit their dispute to arbitration (see Thornton, Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 7503, p. 488).
Other than on initial applications under CPLR 7503 (subd. [b]) to stay the proceedings, the statutes limit the right of. the courts to intervene in arbitration proceedings to postaward review , on applications to vacate or modify the award under *928 CPLR 7511. “ Prior to arbitration the court may not declare the proper area of the arbitrators’ jurisdiction even where the parties seek such instruction. . Similarly, where arbitration is pending, the court cannot advise the arbitrators as to the scope of their jurisdiction, the statutory power of the. court being limited to either staying the proceedings or vacating the award.” (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7501.41.)
In addition to the' two narrowly limited, prearbitration and postaward roles reserved to the courts under CPLR 7503 and 7511; our court has on occasion withheld questions involving “ public policy of the first magnitude ” from the arbitral forum (Matter of Aimcee Wholesale Corp. [Tamar Prods.], 21 N Y 2d 621, 625; cf. Matter of Allied Van Lines [Hollander Express & Van Co.], 29 N Y 2d 35). In so doing; ^however, we hoped rather than demeaning the arbitration process to enhance the proper role of arbitration “ in settling the practical business problems of the everyday business world ” (idem, p. 630).
To send the present dispute between Talcott and Lowenstein to arbitration, as will follow from the court’s decision today, but under directions to the arbitrators, on the one hand, that Lowenstein may assert.claims under the three so-called “ paid ” contracts by way. of setoff and, on the other, that Lowenstein may not seek affirmative recovery under either the “ paid ” or the “ unpaid ” contracts, appears to me to involve determinations as to whether and tó what extent Lowenstein’s claims are tenable and thus to pass on the merits of the dispute —precisely the issues explicitly withheld from the courts by the last sentence of CPLR 7501.
The Appellate Division and now a majority of our court appear to fashion an exceptional, extra-CPLR 7503 (subd; [b]), prearbitration remedy for this particular case. I perceive no basis for making any such special exception; this case appears to me to be a cla°ssie instance of resolution of “ practical business problems of the everyday business world ”.
I take it no one would countenance the intervention by the courts here were the dispute between Barry and Lowenstein, the original parties to the contracts. The majority of our court appears to conclude, however, that a different result may follow because Talcott is an assignee rather than an original contracting party. I fail utterly to comprehend how or why one party to the original contracts (Barry), by the unilateral act of *929 assignment of accounts receivable thereunder to a commercial factor, can effect a modification of the rights of the other party (Lowenstein) under the original arbitration agreement. “ "Where the assignee becomes plaintiff and thus stands on the contract, simple fairness would dictate that he take his right to enforce the contract encumbered by whatever burdens may have been imposed upon that right.” (McLaughlin, Supplementary Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 7501, p. 148, Supp.) In general the assignee has been held to assume the obligation under an agreement to arbitrate. (Blum’s, Inc. v. Ferro Union Corp., 36 A D 2d 584, affd. 29 N Y 2d 689; cf. Uniform Commercial Code, § 2-210, subd. [47].) Indeed the majority does not suggest that Talcott, the assignee here, is not bound by the arbitration agreement.
If an assignee wishes to avoid arbitration, I would observe that, of course, it is under no obligation to accept the assignment in the first place, and it may decline to do so unless the -arbitration agreement is deleted or modified to suit its taste. This aspect of the matter is irrelevant in the present case, however, because it was Talcott, the assignee, who in the first instance initiated the present arbitration proceeding.
I would finally observe that on a postaward motion to vacate any party to an arbitration proceeding may raise an issue as to whether the arbitrator exceeded his power in making the particular award (CPLR 7511, subd. [b], par. 1, cl. [iii]; but cf. Matter of Granite Worsted Mills [Aaronson Cowen, Ltd.], 25 N Y 2d 451). To countenance such assertions by way of anticipatory speculation, as in the present case, will serve only to strike at the heart of the arbitration process and further to congest our already crowded court calendars. I cannot think that the majority would wish "to be understood as suggesting that every time an apprehensive party foresees possible overreaching by an arbitrator he may rush to the courts crying for protection.
In sum, I find no sufficient basis for the conclusion of the majority that the facts of this case warrant chiseling out a special foothold for judicial intrusion. Indeed I find today’s holding quite at variance with the attitude manifested by our court when Judge Wachtleb, writing for a unanimous court in Matter of Weinrott (Carp) (32 N Y 2d 190) recently said: “ The *930 CPLR arbitration provisions (CPLR 7501 et seq.) evidence á legislative intent to encourage arbitration. Certainly the avoidance of court litigation to save time and resources of both the courts and the parties involved maké this a worthwhile goal ” (idem, at p. 199).
I would, therefore, reverse the order of the Appellate Division and deny Talcott’s application for a stay of arbitration.
Order affirmed, etc.